UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| WANDA DUFF, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 09-73-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Wanda Duff ("Duff") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 10 and 11] Duff contends that the ALJ's decision regarding her mental limitations was not supported by substantial evidence. However, the Commissioner contends otherwise, arguing that the ALJ's decision should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Duff.

**I.   Background**

Duff filed an application for supplemental security income ("SSI") on August 29, 2005, alleging disability beginning January 1, 2005. Her claim was denied initially and upon reconsideration. After timely filing a request for a hearing, Duff, along with her attorney Jeremy Morgan and vocational expert ("VE") Daryl Martin, participated in a video hearing before

Lexington, Kentucky-based ALJ Don C. Paris on July 3, 2007. ALJ Paris issued his unfavorable decision on July 26, 2007, finding that Duff was not disabled under § 1614(a)(3)(A) of the Social Security Act. Duff now appeals this decision.

At the time of the administrative hearing, Duff was a 46-year-old woman with a high school education and no relevant work history. She alleges disability based on diabetes, back pain, vision problems, depression, hypertension, and high cholesterol. [Tr., pp. 474-484] The ALJ found that Duff had the following severe impairments: mild visual acuity bilateral; obesity; and situational depressive disorder. He also found that the following impairments were non-severe: diabetes mellitus; hypertension; high cholesterol; and low back pain. [Tr., p. 14] Based on these findings, the ALJ assessed Duff with the following residual functional capacity ("RFC"):

> [Ability] to perform the exertional requirements of work except for work above the medium level . . . Nonexertionally she has mild visual problems and she would not be able to perform work requiring precise near and far visual acuity. She also suffers from a depressive disorder secondary to situational events; however, she has the mental capacity to understand, remember and carry out at least simple work instructions and maintain the concentration and attention to perform such tasks; she can adequately relate to co-workers and supervisors in an object-focused work environment; adapt to routine changes and pressures of a routine work environment.

[Tr., p. 17] Based on this RFC, along with other considerations, the ALJ found that Duff had not been under a disability since the date alleged.

**II.    Standard of Review**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment

of at least one year's expected duration." *Barnhart v. Thomas*, 540 U.S. 20, 23 (2003) (quoting 42 U.S.C. § 1382c(a)(3)(B)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" 20 C.F.R. § 416.920(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, a claimant must show that she suffers from a severe impairment. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine if she can do past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work which exists in the national economy. 20 C.F.R. § 416.920(e). If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step,

proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin,* 475 F.3d at 730; *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.    Analysis

Duff contends that the ALJ's decision was not supported by substantial evidence. Specifically, she argues that the "ALJ acted as his own medical expert" by "crafting his own mental limitations," namely, finding that her depression was a severe impairment. [Record No. 10] The medical evidence in the record contains no mental RFC assessments and no psychological consultative examinations. The only records pertaining to her mental limitations are from her treatment with Kentucky River Community Care ("KRCC"). [Record No. 10] Duff alleges that the ALJ should have obtained a medical opinion in interpreting the KRCC records instead of "playing doctor" by substituting in his own "medical expertise." [Record No. 10] In support of her argument, Duff relies upon holdings in *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000) and *Back v. Barnhart*, 63 F. App'x 254 (7th Cir. 2003). However, both of these cases are distinguishable.

In *Green*, the ALJ did not give proper weight to significant evidence that the claimant had a severe medical impairment. The Seventh Circuit found that the clinical records were extensive enough to support the claimant's allegations of disabling pain, and that the ALJ's conclusions were simply not connected to these records or other evidence. *Green*, 204 F.3d at 781. Based on the seriousness of health problems alleged in the record, the ALJ should not have rejected the claim without requesting further explication from a medical professional. However, this holding was not a blanket rule requiring ALJs to obtain medical opinions for all medical records. Instead, it was a specific finding that this ALJ's conclusions were contrary to the medical records and needed support from a medical professional.

The second case cited by Duff does not support her position at all. In *Back*, the Seventh Circuit distinguished the facts from *Green*, stating that examples of an ALJ's "play[ing] doctor" typically are characterized by: (1) the rejection of a doctor's medical conclusion without other evidence, and (2) drawing medical conclusions without relying on medical evidence. *Back*, 63 F. App'x at 259. Tellingly, the latter characterization (*i.e.*, drawing medical conclusions without relying on medical evidence) is attributed as the holding from *Green*. The Seventh Circuit found that the ALJ properly discussed all of the medical opinions contained in the record and his conclusions were supported by the record. Here, the ALJ's handling of the record is akin to the facts in *Back*, rather than *Green*. As in *Back*, the ALJ in the present case considered all of the evidence of record, resolved any conflicts, and made his determination accordingly. In short, his decision is supported by substantial evidence.

Duff's medical records from the KRCC date from March 26, 2006. The ALJ reviewed these records and properly noted that, in evaluating the severity of mental disorders, he must consider "functional limitations in areas of functioning deemed essential to work; specifically activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation." *See* 20 C.F.R. pt. 404, Subpt. P., App. 1, § 12.00. Based on the counseling notes, he noted that "relationship problems, grief over family member deaths and conflict problem[s]" were paramount to her disorder. Her long-term prognosis was "fair to good," and her initial alleged symptoms were of "sleeping difficulty, appetite problem and withdrawal from people." [Tr., pp. 15-16]

The ALJ also made observations about her daily functioning. Duff has a driver's license and is able to drive. She maintains her own personal hygiene, uses the microwave, stove and oven, in addition to performing all of her own household chores, including laundry, dishwashing, sweeping, mopping, and bathroom cleaning. Duff shops for her own groceries. As far as social interaction, she occasionally shops with a friend's wife and visits with family members at her own home and at their homes. For leisure, she watches television. [Tr., p. 16]

Based on all of these factors, the ALJ found that Duff had a depressive disorder "that causes mild restrictions on activities of daily living, moderate difficulties in maintaining social functioning and mild to moderate difficulties in maintaining concentration, persistence, or pace." [Tr., p. 16] However, this disorder did not meet the requirements for disability, as they are enumerated in paragraph B of 20 C.F.R.'s Listing 12.04 regarding mental disability. Under paragraph B, the claimant must show two of the following conditions: (1) a marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04(B). The KRCC records reveal that Duff's chief complaints stem from deaths in the family, relationship issues with her boyfriend, and relationship issues with friends. She was prescribed a number of medications for her mental condition, which she reported had no side effects. [Tr., p. 390] Further, she denied any hallucinations or psychotic symptoms. Although a more recent KRCC record, dated February 26, 2007, noted that she was "anxious," it also noted that she was

"appropriately behaved, oriented, and well-groomed." [Tr., p. 405] Other typewritten reports indicate similarly positive affects and moods. [Tr., pp. 339, 390]

The ALJ found that these records did not lead to any "marked" restrictions or difficulties, instead finding that all of Duff's limitations were mild or moderate. As a result, the ALJ determined that she did not suffer from a mental disability. But the ALJ did incorporate Duff's limitations into her RFC, finding that despite her disorder, she was able to "carry out at least simple work instructions," "adequately relate to co-workers and supervisors . . . and adapt to routine changes and pressures of a routine work environment." [Tr., p. 17]

The limitations assessed by the ALJ are plainly supported by the KRCC records, and there is no indication that he diagnosed any conditions or formulated his own medical conclusions. In fact, the ALJ simply "translated" the KRCC records into his RFC assessment. [Tr., p. 17] In doing so, he was under no obligation to consult with another medical professional before rendering his determination. "An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *see also Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (stating that the ALJ has the authority to consult with a specialist if the existing medical records do not contain sufficient evidence to make a disability determination). In addition, it is well settled that the ultimate issue of disability is reserved to the Commissioner, not a medical examiner or outside consultant. *Kidd v. Comm'r of Soc. Sec.*, No. 07-6111, 2008 U.S. App. LEXIS 13675, at *11 (6th Cir. June 25, 2008); *Bass*, 499 F.3d at 511; *Cutlip v. Sec'y*

*of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

### IV.   Conclusion

Under the facts presented, the ALJ was under no obligation to obtain another medical opinion. The ALJ's determination of Duff's mental limitations is supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1.   Plaintiff Wanda Duff's Motion for Summary Judgment [Record No. 10] is **DENIED**;

2.   Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 11] is **GRANTED**; and

3.   The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 23rd day of June, 2009.



Signed By:
*Danny C. Reeves* DCR
United States District Judge